UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES EDWARD FREDRICK, )<br>)<br>Defendant. ) | No. 6:09-CR-53-GFVT-HAI<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 62), the Court considers reported violations of supervised release conditions by Defendant James Edward Fredrick. This District entered a judgment against Defendant in June 2010[1] for failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). D.E. 28. Defendant's original punishment terms were thirty-seven months of imprisonment followed by a life term of supervised release. *Id.* at 2-3. Defendant began his supervised release term on March 28, 2012.

A little over seven months later, on November 7, 2012, the District Judge signed a Request for Modifying the Conditions or Term of Supervision With Consent of the Offender requiring Defendant to serve eight consecutive weekends in jail. D.E. 29. Officer Scott Greiwe of the United States Probation Office (USPO) requested this modification due to two instances (on October 16 and October 22, 2012) of Defendant's "unauthorized contact with minors and his failure to follow the instructions of the probation office (by being present with his girlfriend's children)[.]" *Id.* at 2.

---

[1] Defendant was sentenced on May 26, 2010, *see* D.E. 25, and the Judgment notes an imposition date of May 27, 2010. D.E. 28. The District Judge signed the Judgment on June 3, 2010, and the Judgment was entered into the record on June 4, 2010. *Id.*

On January 28, 2013, the USPO issued a Supervised Release Violation Report, and secured a warrant from the District Judge. The Supervised Release Violation Report charged Defendant with violating a Special Condition of Supervision that provides, "The defendant shall not consume any alcoholic beverages." D.E. 28 at 4. The Court conducted an initial appearance pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure on February 14, 2013, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 37.

At the final hearing on February 19, 2013, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 38. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the single charged violation. The parties presented an agreement as to the sentence: revocation and a term of imprisonment of four months followed by re-imposition of a life term of supervision. The Court recommended this sentence to District Judge Van Tatenhove (D.E. 39), which Judge Van Tatenhove ultimately adopted (D.E. 42). Judge Van Tatenhove also modified seven conditions of Defendant's supervised release. D.E. 42 at 9–10. Defendant's new term of supervised release began on June 13, 2013.

On July 10, 2013, the USPO issued a Supervised Release Violation Report charging two violations, and on July 23, 2013, District Judge Van Tatenhove issued a warrant for Defendant's arrest. D.E. 45. Defendant was charged with violating Standard Condition Number 7 by using marijuana, and with violating the condition that he "not commit another federal, state, or local crime." On August 7, 2013, Judge H. Bruce Guyton sitting in the Eastern District of Tennessee conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 40. D.E. 46 at 6. At that hearing, Defendant waived his right to any Rule 5 or 5.1 hearings *(Id.* at 3), and

2

Defendant was committed back to the Eastern District of Kentucky. *Id.* at 6. On August 14, 2013, the Court conducted an initial appearance pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *See* D.E. 48.

At the final hearing on August 28, 2013, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 53. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the charged violations. Further, for the purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the charged violations. The United States thus established both violations under the standard of section 3583(e). The parties presented an agreement as to the sentence, which did not bind the Court. The parties agreed to revocation, and recommended that the Court impose a term of imprisonment of eighteen months followed by re-imposition of a life term of supervision under the conditions imposed by Judge Van Tatenhove in his May 13, 2013 Order (D.E. 42). The Court recommended this sentence to District Judge Van Tatenhove (D.E. 55), which Judge Van Tatenhove ultimately adopted (D.E. 58). Defendant began his new term of supervised release on November 21, 2014.

On March 18, 2015, the USPO issued a Supervised Release Violation Report (the "Report"), and secured a warrant from Judge Van Tatenhove. The Report charged three violations. According to the Report, Officer Greiwe received information that Defendant may have created a page on Facebook. After searching the internet on March 9, 2015, Officer Greiwe discovered the Facebook page of a "James Edword." Officer Greiwe reported that he observed a post by "James Edword" which stated that he was engaged to an "Ella Douglas," whom Office Greiwe knew to be Defendant's girlfriend. Further, Officer Greiwe discovered a post on "James

3

Edword's" Facebook page which stated "Happy late birthday," posted four days after Defendant's birthday. On March 12, 2015, Officer Greiwe contacted Defendant at his residence to discuss the possible violation, and Defendant admitted to using his aunt's computer to create an email address and a Facebook account without the permission of the USPO and in violation of Kentucky law. He further admitted to not registering the email address with the Kentucky Division of Probation and Parole, as required by the sex offender registry.

First, as a result of the above factual background, the Report charges Defendant with violating the condition that he not possess or use a computer or any device with access to any on-line computer service without prior written approval of the probation officer. According to the Report, Defendant did not request permission from the USPO to use his aunt's computer. This is a Grade C supervised release violation.

Second, the Report charges Defendant with violating the condition that he not commit another federal, state, or local crime. According to the Report, Defendant admitted to creating a Facebook page with the name of "James Edword" in violation of Kentucky Revised Statute § 17.546, a Class A Misdemeanor. This is a Grade C supervised release violation.

Third, the Report again charges Defendant with violating the condition that he not commit another federal, state, or local crime. According to the report, Defendant admitted to creating an email address in violation of Kentucky Revised Statute § 17.510(10)(c), a Class D Felony. This is a Grade B supervised release violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on March 30, 2015, and set a final hearing before the undersigned following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 64. The United States moved for interim detention,

and Defendant moved for release on the previously imposed conditions. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on April 8, 2015, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583, including the right of allocution. D.E. 66. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations One through Three. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for those particular violations as described in the Report.

The Court has evaluated the entire record, including the most recent Supervised Release Violation Report and accompanying documents, the sentencing materials from the underlying Judgment in this District, and the documentation concerning Defendant's previous violations. Additionally, the Court has considered all of the section 3553 factors imported into the section 3583(e) analysis. Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction for failing to register as a sex offender constitutes a Class C felony. *See* 18 U.S.C. § 2250(a); 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under section 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely

5

advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).  Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation.  Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and a Grade B violation, *see* U.S. Sentencing Guidelines Manual § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is twenty-one to twenty-seven months.  However, pursuant to 18 U.S.C. § 3583(e)(3), the statutory maximum amount of imprisonment that can be imposed is twenty-four months.  Therefore, Defendant's Guidelines range effectively becomes twenty-one to twenty-four months.  *See*  U.S.S.G. § 7B1.4(b)(1).

At the hearing, the parties disputed the appropriate sentence.  The United States urged the Court to revoke and to sentence Defendant to a term of twenty-four months, followed by a life term of supervised release.  The United States noted that Defendant's terms of supervised release were modified in November of 2012 due to his being present at the residence of his girlfriend while her two minor-age children were also present (*see* D.E. 29), and that Defendant had violated the conditions of his release in January 2013 (*see* D.E 42; D.E. 43).  The United States argued that the breach of the Court's trust becomes progressively worse with each violation. Indicating that Defendant had been informed of his conditions of release regarding use of the internet, as well as of state law, the United States stressed the need for a sentence which would deter criminal conduct and protect the public.

6

Defense counsel requested a sentence of twelve months and one day of incarceration, followed by a six-to-twelve month term of supervised release. He offered that Defendant admitted his conduct to the USPO, admitted to each violation, and should receive credit for accepting responsibility. Defense counsel summarized Defendant's history, and noted that the 1991 criminal charge which led to Defendant's status as a sex-offender occurred when he was only twelve years old, lacks the risks typically associated with a sex crime, and has dictated the course of his life since. Defense counsel argued the following: Defendant, despite having an extensive history of drug abuse, has not failed any drug screens during his most recent term of supervised release; he currently lives with his fiancé who has no criminal history; he is working with a comprehensive care program to develop life skills; and he is attempting to earn his GED. Defense counsel argued that the violations are technical in the sense that he did not violate by committing any sex crimes, but merely by using Facebook and creating an email address. Defense counsel noted that Defendant has submitted himself to a polygraph, and that the USPO concluded from the results of that test that Defendant is not a risk to offend against children. Further, he argued that none of Defendant's "friends" on Facebook were minors, and no emails were directed towards, or related to, minors.

Defendant offered a statement to the Court, during which he asked the Court to consider the following: he used Facebook, but not for the purpose of seeking contact with minors; he has passed his drug tests and a polygraph; he does not drink; he was twelve years old when he committed a sex crime; he admitted creating the email address and Facebook page to probation; he has a good fiancé; he is getting his GED; he is visiting a comprehensive care clinic on his

7

own, five days a week, when it was only recommended that he visit two times per month; and his fiancé is pregnant.

The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). In February 2013, Defendant had been on supervised release for less than one year and violated his conditions of release multiple times at fairly regular intervals. During that period, Defendant received a break from the USPO, the United States, and the Court. He was warned at that time that any future violations of the Court's trust would not be met with such leniency. D.E. 39 at 5. In September 2013, the Court reiterated, while again addressing revocation, that future violations would not be met with leniency. D.E. 55 at 5, 6. Here, on Defendant's third set of supervised release violations, the Court finds troubling Defendant's continued use of deception—this time by using false names to create a Facebook page and email address so as to avoid detection by the USPO. A significant sentence is required to sanction Defendant's continued breaches of trust.

The Court has carefully weighed the nature and circumstances of the offense, the need for education, training, and treatment, the need to deter criminal conduct, and the need to protect the public. Defendant's drug abuse and criminal history are far from typical, and the current conduct (creating an email address), though described by defense counsel as relatively benign, is felonious given Defendant's status as a sex offender. As such, nothing in the record warrants a downward departure. The Court finds that a term of twenty-one months of imprisonment is

sufficient, but not greater than necessary, to meet the statutory goals of sentencing at this stage for all the reasons described above.

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Here, the re-imposition maximum would be a life term (the original authorized term). *See id.* § 3583(k). Often, when a defendant faces a third revocation, the public's resources are no longer worth investing in that individual's improvement. However, as described during the hearing, Defendant appears to be the type of defendant who would benefit from continued supervision as discussed by the United States Supreme Court in *Johnson v. United States*, 529 U.S. 694 (2000). *See Johnson v. United States*, 529 U.S. 694, 708-09 (2000) ("The congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty," and "no prisoner needs [supervised release] more than one who has already tried liberty and failed."). In imposing a significant period term of supervised release, the Court intends to provide Defendant with a much needed period of time free of drugs and alcohol followed by a period to implement the life lessons he hopefully learns while clearheaded. In other words, the Court has fashioned a supervised release term designed to allow Defendant to prove he can transition into society after becoming clean and to provide an incentive through a reachable goal of coming off release after five years. Accordingly, the Court recommends that a five-year term

of supervised release be imposed with the same conditions of Defendant's last Judgment (D.E. 59 at 3-4).

To conclude, based on the violations found, the Court **RECOMMENDS** that Defendant's supervised release be revoked and that he be incarcerated for a term of **twenty-one months**, followed by a **five-year term of supervised release** subject to the conditions imposed in the last Judgment in this case (D.E. 59). The Court **FURTHER RECOMMENDS** that the Bureau of Prisons's designation as to Defendant be appropriate based on Defendant's sex offender status.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 20th day of April, 2015.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge