UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES EDWARD FREDRICK, )<br>)<br>Defendant. ) | No. 6:09-CR-53-GFVT-HAI<br><br>RECOMMENDED DISPOSITION |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 82), the Court considers reported violations of supervised release conditions by Defendant James Edward Fredrick. This District entered a judgment against Defendant in June 2010[1] for failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). D.E. 28. Defendant was sentenced to 37 months of imprisonment followed by a life term of supervised release. *Id.* at 2-3.

**I.**

Defendant began his first supervised release term on March 28, 2012. On November 7, 2012, Defendant's terms of supervised release were modified to require Defendant to serve eight consecutive weekends in jail. D.E. 29. The United States Probation Office ("USPO") requested this modification due to two instances of "unauthorized contact with minors and his failure to follow the instructions of the probation office (by being present with his girlfriend's children)[.]" *Id.* at 2.

---

[1] Defendant was sentenced on May 26, 2010, *see* D.E. 25, and the Judgment notes an imposition date of May 27, 2010. D.E. 28. The District Judge signed the Judgment on June 3, 2010, and the Judgment was entered into the record on June 4, 2010. *Id.*

In 2013, Defendant's supervised release was revoked for violating the condition that he not consume any alcoholic beverages. D.E. 39, 42, 43. The Court adopted the jointly recommended sentence of four months' imprisonment followed by re-imposition of a life term of supervision. *See id.* Defendant's second term of supervised release began on June 13, 2013.

In July 2013, the USPO charged Defendant with violating his release conditions by using marijuana and thereby also committing the crime of marijuana possession. *See* D.E. 55. Defendant admitted the violations, and, by Judgment entered in October 2013, he was sentenced to eighteen months of imprisonment, followed by reimposition of lifetime supervised release. D.E. 59. Defendant's third term of supervised release began on November 21, 2014.

In March 2015, the USPO issued a new violation report which alleged that Defendant had created a Facebook page. This report charged three violations: (1) using a computer with online access, (2) violating a Kentucky law prohibiting sex offender registrants from using social media websites, and (3) violating a Kentucky law prohibiting sex offender registrants from creating an email address. D.E. 67. Defendant stipulated to the violations, and was sentenced to 21 months of imprisonment, followed by 60 months of supervised release. D.E. 71. Defendant's fourth term of supervised release began on October 6, 2016.

In September 2017, the USPO issued a violation report informing the Court that Defendant had been arrested and charged with child abuse and endangering the welfare of a minor. In October 2018, while the charges were pending, Defendant was released on the additional conditions that he have no contact with his teenage stepchildren and that he submit to a polygraph examination. D.E. 77. In May 2018, the parties filed a joint motion to dismiss the charge in the report (D.E. 80), and that motion was granted (D.E. 81).

## II.

On July 17, 2018, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report,

> [Probation Officer Scott Greiwe] contacted Fredrick at his residence on July 6, 2018, for the purpose of obtaining a urine specimen for drug testing. After approximately one hour, Fredrick provided a small amount of urine that was tested via instant testing device and returned positive results for marijuana. Fredrick was advised of the preliminary results, which he denied, and advised that he could not produce the minimum amount of urine to be tested at the laboratory for confirmation. Fredrick later reported to the emergency room at Baptist Health Corbin, which was confirmed by the undersigned. Fredrick later provided discharge paperwork from Baptist Health Corbin which noted diagnoses for urinary tract infection, generalized abdominal pain, diarrhea, and abscesses. He was released from Baptist Health Corbin later on the evening on July 6, 2018.
>
> On July 9, 2018, [Officer Greiwe] contacted Fredrick at his residence and he provided a urine specimen that was sealed and sent to Alere Toxicology Services, Inc. for confirmation of marijuana. Fredrick denied the use of any controlled substances. Alere returned positive results for marijuana metabolite on July 16, 2018. The specimen was also diluted.

The Report charges two violations. Violation #1 charges a failure to comply with the condition prohibiting the use of any controlled substance, except as prescribed by a physician. Based the positive test result for marijuana metabolite, this is a Grade C violation.

Relying on the same conduct, Violation #2 charges a violation of the condition requiring that Defendant not commit another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession, the report characterizes Defendant's marijuana use as a violation of 21 U.S.C. § 844(a). Due to Defendant's prior controlled substance conviction, this is a Class E felony, rendering Violation #2 a Grade B violation.

Magistrate Judge Ingram conducted an initial appearance pursuant to Rule 32.1 on August 6, 2018, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 85. The United States moved for interim detention; Defendant argued for release. *Id*. The Court found that detention was appropriate, in light of the heavy release burden under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

At the final hearing on August 23, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583, including the right of allocution. D.E. 66. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1 and #2 as described in the Report. Specifically, he stated, "I did smoke a joint." He agreed that he had the marijuana "in his hand or in his possession." The government thus established the violations under the standard of section 3583(e).

### III.

Upon a finding of guilty, the Court is required to revoke Defendant's release because he possessed a controlled substance in a manner that violated the mandatory conditions of supervision. *See* 18 U.S.C. § 3583(g)(1); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction for failing to register as a sex offender constitutes a Class C felony. 18 U.S.C. §§ 2250(a), 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation for Violation #1 and a Grade B violation for Violation #2. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and a Grade B violation,[2] Defendant's range, under the Revocation Table of Chapter 7, is 21 to 27 months. However, given the 24-month statutory maximum of § 3583(e)(3), Defendant's Guidelines Range is effectively 21 to 24 months. U.S.S.G. § 7B1.4(b)(1).

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *Id.* § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *Id.* § 3583(b). Here, the re-imposition maximum is life (the original authorized term). *Id.* § 3583(k).

## IV.

At the hearing, the parties disputed the appropriate sentence. The government recommended 21 months of incarceration, followed by five years of supervised release. The defense requested inpatient drug treatment in lieu of incarceration, followed by three years of supervised release with conditions tailored to Defendant's intellectual functioning.

---

[2] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

5

Defendant called his probation officer, Scott Greiwe, to testify. Officer Greiwe testified that Defendant is cooperative and respectful toward him. When asked whether Defendant appeared to have "below average intelligence" and "issues with his judgment," Officer Greiwe agreed that these were fair characterizations. He testified that Defendant reads, but does so slowly. Defendant is also assisted in his day-to-day activities by CompCare. Officer Greiwe testified that Defendant committed the sex offense that requires his registration when he was young. Now, there is "no indication" that he would re-offend; there has been nothing concerning in his polygraphs. Officer Greiwe testified that Defendant began using drugs before he was a teenager. His mother and stepfather were alcoholics, and Defendant suffered physical and sexual abuse from his stepfather. As a young adult, he suffered a gunshot wound. Officer Greiwe agreed with the statement that Defendant had spent his formative years in juvenile detention.

On cross-examination, Officer Greiwe agreed that Defendant had not always been honest with him. This includes his prior denial of marijuana use in connection to the current revocation conduct, as well as the diluted specimen he submitted on July 9. He testified that, despite Defendant's apparent intellectual difficulties, he appeared to understand the officer's directions.

The government urged the Court to revoke and to sentence Defendant to a within-Guidelines term of 21 months, followed by five more years of supervised release. According to the government, society "cannot tolerate" Defendant being under the influence of drugs. He poses a danger, in light of his deception, evasion, avoiding registration requirements, theft offenses, and a conviction for threatening a law enforcement officer. Defendant has three prior revocations and a condition that he undergo weekend confinement, which was cut short when he showed up drunk at the jail. One prior revocation was, like this one, for marijuana use. This

time, he made matters worse by denying his drug use and providing a diluted urine specimen. These facts together suggest a heightened need to deter criminal conduct and protect the public. They also represent a severe breach of the Court's trust.[3]  The government argued that a 21-month sentence, as opposed to a higher one, was appropriate only because Defendant accepted responsibility by stipulating to the violations.  Concerning additional supervised release, the government recommended another five-year term (with no new conditions) as an "incentive" to encourage Defendant's compliance.

The defense asked the Court to review the submitted medical records and consider them as mitigation.  These records highlight Defendant's difficult history and his mental health issues. The defense argued that the underlying offense was "a registration offense," and thus not particularly serious.  Defendant has recently been compliant with his registration requirements and receives regular polygraph examinations.  He is "low functioning" and has a "drug problem" that he is trying to overcome.  Defendant has "good intentions" but "makes bad decisions." Further, he is still grieving over his mother's death that happened years ago.  He suffers anxiety attacks and gets help from CompCare three times a week.  His criminal history largely reflects how he gets "swept up" in other people's misdeeds because he is a people pleaser.

According to the defense, Defendant had no chance in life.  He was raised in Chicago by alcoholics and never had a stable home life.  The defense asked, in light of Defendant's mental health issues, "how will prison help him?"  He gets victimized in prison, which does not promote respect for the law.  A Guidelines punishment, the defense argued, is too severe and does not fit

---

[3] The government argued that Defendant was shown grace when last year's revocation proceedings were dismissed upon the government's motion.  The defense countered that this argument was inappropriate; the charges were dismissed because the government did not believe the alleged violation had occurred.  The Court will not consider anything related to last year's revocation proceedings in tailoring this recommendation.

the crime of marijuana possession, which in many instances is not even a crime. Instead, the defense requested inpatient drug treatment (in lieu of revocation), followed by three years of supervised release under conditions tailored to intellectual functioning. The defense did not specify what those conditions might be. Nor did the defense recommend a specific treatment provider or course of treatment.

V.

The Court has evaluated the entire record, including the most recent Supervised Release Violation Report and accompanying documents, the sentencing materials from the underlying Judgment in this District, the documentation concerning Defendant's previous violations, and the medical records that were admitted under seal. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender. *See* Guidelines 7 Pt. A(3)(b). Here, Defendant's release has been revoked on three previous occasions, and he has been warned that future violations would not be met with leniency. Further, he has returned to the same conduct that garnered a previous revocation. This breach of trust is compounded by his initial lack of candor with the probation officer and his attempt to evade detection by diluting his urine specimen. Although the Court is sympathetic to Defendant's history and his psychological difficulties, he remains responsible for his conduct. No one has suggested that he is incompetent. A significant sentence is required to sanction Defendant's continued breaches of trust.

The same conduct supports a significant sentence in light of the need to protect the public and to deter future criminal conduct. The need to protect the public is weighty here because

Defendant's continued drug use puts himself and others at risk and helps fuel the illegal drug trade.

Defendant's personal history and characteristics are colored by his repeated failures to comply with his conditions of release. The Court has been aware all along of his inadequate upbringing, and has taken his troubled past into account. But the Court simply cannot excuse offenders because they had a difficult childhood. The Court is also aware of Defendant's apparent low functioning and his need for assistance in his daily life. But again, no one has suggested that he is incapable of complying with his conditions of release.

The Court has considered the need for education, training, or treatment. The defense argued for treatment in lieu of revocation, presumably invoking the exception for mandatory revocation under 18 U.S.C. §§ 3583(d) and (g). The defense made no showing that Defendant is a suitable candidate for a substance abuse treatment program.

Another factor concerns the nature and circumstances of Defendant's underlying conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Here, the revocation conduct is unrelated to his underlying conviction for failure to register. This factor is not particularly relevant.

The factor concerning the need to avoid unwarranted sentencing disparities is usually addressed by a within-Guidelines sentence. Any deviation from the Guidelines must be supported by a specific reason that justifies the extent of the departure. *United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011). Here, no specific reason has been given that would justify a below-Guidelines sentence.

The Court finds that a term of 21 months of imprisonment is sufficient, but not greater than necessary, to meet the statutory goals of sentencing at this stage for all the reasons described above.

Concerning supervised release, the Court agrees with the government that a limited period of supervision could create an incentive for greater compliance. Instead of the previous five-year term, a two-year term would be less onerous and create a more realistic light at the end of the tunnel. As before, this supervised release term is designed to allow Defendant to prove he can transition into society after becoming clean and to provide an incentive through a reachable goal of coming off release after two years. Accordingly, the Court recommends that a 24-month term of supervised release be imposed with the same conditions of Defendant's last Judgment (D.E. 71 at 3-5).

## VI.

Based on the foregoing, the Court **RECOMMENDS:**

(1) That Defendant be found guilty of Violation #1 and Violation #2.

(2) Revocation with a term of imprisonment of **21 months**, followed by a **two-year term of supervised release** subject to the conditions imposed in the last Judgment in this case (D.E. 71). The Court **FURTHER RECOMMENDS** that the Bureau of Prisons's designation take into account Defendant's sex offender status.

The Court hereby **SCHEDULES** a hearing for allocution and sentencing on **Tuesday, October 9, at 3:30 p.m.**, in London, Kentucky, before Judge Van Tatenhove. This hearing may be cancelled if Defendant waives his right of allocution.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 27th day of August, 2018.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge