UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                         )<br>         Plaintiff,                              )<br>                                                         )<br>v.                                                    )<br>                                                         )<br>JAMES EDWARD FREDRICK,       )<br>                                                         )<br>         Defendant.                           ) | No. 6:09-CR-53-GFVT-HAI<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 106), the Court considers reported violations of supervised release conditions by Defendant James Edward Fredrick. This is his sixth revocation.

Judge Van Tatenhove entered a judgment against Defendant in June 2010 for failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). D.E. 28. Defendant was sentenced to 37 months of imprisonment followed by lifetime supervised release. *Id.* at 2-3.

**I.**

Defendant began his first supervised release term on March 28, 2012. On November 7, 2012, Defendant's terms of supervised release were modified to require Defendant to serve eight consecutive weekends in jail. D.E. 29. The United States Probation Office ("USPO") requested this modification due to two instances of "unauthorized contact with minors and his failure to follow the instructions of the probation office (by being present with his girlfriend's children)[.]" *Id.* at 2.

In 2013, Defendant's supervised release was revoked for violating the condition that he not consume alcoholic beverages. D.E. 39, 42, 43. The Court adopted the jointly recommended

sentence of four months' imprisonment followed by re-imposition of a life term of supervision. *See id.* Defendant's second term of supervised release began on June 13, 2013.

In July 2013, the USPO charged Defendant with violating his release conditions by using marijuana and thereby also committing the crime of marijuana possession. *See* D.E. 55. Defendant admitted the violations, and, by Judgment entered in October 2013, he was sentenced to eighteen months of imprisonment, followed by reimposition of lifetime supervised release. D.E. 59. Defendant's third term of supervised release began on November 21, 2014.

In March 2015, the USPO issued a new violation report which alleged that Defendant had created a Facebook page. This report charged three violations: (1) using a computer with online access, (2) violating a Kentucky law prohibiting sex offender registrants from using social media websites, and (3) violating a Kentucky law prohibiting sex offender registrants from creating an email address. D.E. 67. Defendant stipulated to the violations, and was sentenced to 21 months of imprisonment, followed by 60 months of supervised release. D.E. 71. Defendant's fourth term of supervised release began on October 6, 2016.

In September 2017, the USPO issued a violation report informing the Court that Defendant had been arrested and charged with child abuse and endangering the welfare of a minor. In October 2018, while the charges were pending, Defendant was released on the additional conditions that he have no contact with his teenage stepchildren and that he submit to a polygraph examination. D.E. 77. In May 2018, the parties filed a joint motion to dismiss the charge in the report (D.E. 80), and that motion was granted (D.E. 81).

In July 2018, the USPO issued a report stating that Defendant submitted a diluted urine specimen that tested positive for marijuana. Defendant initially denied marijuana use. At the

final hearing, however, he stipulated to drug use and the crime of drug possession. Defendant's release was revoked, and he was sentenced to 21 months of imprisonment, followed by two years of supervised release. D.E. 91.

Defendant began his fifth term of supervised release on January 7, 2020. Prior to that release, on January 2, Judge Van Tatenhove approved the USPO's request to add a condition that Defendant report to Dismas Charities, Manchester, immediately upon release, for two months, to facilitate obtaining housing and employment. Defendant was further ordered to "observe all rules of the facility." D.E. 92.

In August 2020, the USPO reported that Defendant had been evicted from his residence without informing the USPO and his whereabouts were unknown. Defendant had also been fired from his job without informing his officer. He also had failed to attend a scheduled substance abuse and mental health treatment appointment. Defendant ultimately admitted these violations. The USPO also reported that Defendant had violated state law by failing to maintain his address with the Kentucky sex-offender registry. But this alleged violation was dismissed. Defendant's release was revoked, and he was sentenced to eleven months of imprisonment followed by twelve years of supervised release. D.E. 99, 101, 102. Defendant was released again on July 21, 2021, to begin his one-year supervision term.

## II.

On April 15, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report contains the following narrative:

> On April 13, 2022, Fredrick reported to the U.S. Probation Office, in London, Kentucky, and underwent a Computer Voice Stress Analyzer (CVSA) examination. Fredrick was questioned about viewing pornography, and he answered in the negative; however, the CVSA showed deception. Upon further

3

questioning by the examiner, Fredrick admitted to looking at adult pornographic magazines multiple times per week, beginning when he was released on his current term of supervised release in July 2021. Following CVSA examination, Frederick was instructed to wait in the lobby of the U.S. Probation Office. Approximately five (5) minutes later, this Officer went to the lobby to make contact with Fredrick, but he was gone. This Officer subsequently walked out to the main courthouse lobby and was advised by court security he had already exited the building. This Officer called Fredrick's cell phone and left a voicemail instructing him to return to the U.S. Probation Office. A subsequent text message was also sent stating the same. Shortly thereafter, this Officer received a text message reply from Fredrick's wife, Tanya Fredrick, and she reported having Fredrick's cell phone. Mrs. Fredrick advised he came by her place of employment to get gas money after the CVSA examination and advised he was on his way to a doctor's appointment. She agreed to ask Fredrick to contact this Officer when she got home with his phone. Later that night, Fredrick sent a text message stating his wife had just arrived home, and he reported not being aware he was supposed to wait in the lobby following the CVSA examination. Fredrick also advised he went to the doctor.

On April 14, 2022, at 8:12 a.m., this Officer made telephone contact with Fredrick, and he indicated he misunderstood that he was supposed to wait in the lobby following the CVSA examination. Fredrick stated he was not sure what to do, so he sat down briefly and then subsequently left because he had a doctor's appointment. This Officer instructed Fredrick to obtain a doctor's excuse or documentation verifying he was seen by a doctor yesterday. This Officer instructed Fredrick to report to the U.S. Probation Office, in London, Kentucky, at 3:00 p.m., for a drug test, and he was told to bring the requested documentation from his doctor. Fredrick verbally acknowledged his understanding regarding reporting to the office for a drug test. He subsequently failed to report for a drug test as instructed.

Based on Defendant's admission to looking at adult pornographic magazines multiple times per week, Violation #1 alleges a Grade C violation of the condition that prohibits possession or viewing of any form of pornography.

Based on Defendant's failure to report to the Probation Office on April 14, Violation #2 alleges a Grade C violation of the condition that requires Defendant to submit to drug tests administered by Probation and the condition that requires him to report to the probation officer as instructed.

4

The Court conducted an initial appearance on the Report pursuant to Rule 32.1 on May 3, 2022. D.E. 109. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. The United States moved for interim detention; Defendant did not argue for release. The Court found that detention was appropriate in light of the heavy release burden under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id.*

At the final hearing on May 17, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583, including the right of allocution. D.E. 111. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #1 and #2 as described in the Report. He readily admitted he had been looking at adult pornography. He admitted he failed to report to the Probation Office on April 14, although he said his vehicle had run out of gas on the way there and he did not have his cellphone with him. The government thus established both violations under the standard of section 3583(e).

### III.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction for failing to register as a sex offender constitutes a Class C felony. 18 U.S.C. §§ 2250(a), 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39

(6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation for both violations. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months.

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *Id*. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *Id*. § 3583(b). Here, the re-imposition maximum is life (the original authorized term). *Id*. § 3583(k).

## IV.

At the hearing, the parties argued for a jointly recommended penalty of revocation with sixteen months of incarceration (above the Guidelines Range), with no additional supervised release to follow.

According to the government, an above-Guidelines sentence was appropriate because this was Defendants eighth set of violations and sixth revocation. And Defendant had once again effectively "absconded" from Probation. Although the adult pornography use was not by itself terribly concerning, Defendant had aggravated the situation by denying the use. The truth had to come out through polygraph. In Defendant's favor, though, he had ultimately accepted responsibility for the violations, and the government gave him credit for admitting his behavior.

Further, the violations were "classic Grade C violations" and they had no direct connection to the underlying charge involving sexual abuse against a child.

As for taking Defendant off supervision, the government argued that he no longer appears to pose any serious threat of sex crimes against children. Defendant was fifteen years old when he committed the assault that led to his lifetime sex-offender-registry requirement. Defendant's recent violations contain no evidence, the government argued, of a threat of sexual contact with minors. Defendant is still subject to lifetime sex-offender registration, and he will live the rest of his life "under the watchful eye" of his jurisdiction of residence.

The government further argued that future supervision could not be expected to provoke compliance. Supervision requires cooperation and the Probation Office cannot help a defendant (or protect society from a defendant) who will not cooperate. Here, Defendant disobeyed his officer's orders by leaving the office and then again by not returning when instructed to do so. Given Defendant's history of failing to comply with his conditions and the officer's instructions, the government argued that Defendant cannot be expected to comply in the future. Defendant has been given many opportunities to improve and been treated leniently at times, but "none of it has taken." Defendant could have completed his one-year supervision term in July, but he could not even make it one year without violating. There is no additional rehabilitation that Probation can offer, and there are not enough "concerning factors" indicating Defendant poses a danger to society.

The defense expressed disappointment with being back in court again. Defendant is likable but his "bad planning always finds him." "He just doesn't get it," so we keep coming back to Court. Defendant has had a "tough life," which includes having spent 72 months in

7

prison on violations alone.  The defense admitted that the kind of "sad and tragic" circumstances that led to 2020's violations were not present now.  Although Defendant "wants to succeed," he simply "sabotages himself."  The defense was "pretty sure" Defendant would violated again if put on supervision, so Probation's limited resources could be better directed elsewhere.

Defendant addressed the Court.  He wanted the Court to know that he had been working during his latest supervision period.  He was happy to have a job, but being on supervision was causing him to lose jobs because he kept going back to jail.  He was proud that he had been doing good things, especially when he had been sexually assaulted in prison following the last revocation.  He said his drug class had discontinued him because he was doing so well.  He said he was succeeding and he only missed the Probation appointment because he ran out of gas with no cellphone, and he sat by the road in his vehicle for hours.  He had a lot going on at the time, and he allowed it to overwhelm him.  He admitted using adult pornography, but said that pornographic magazines were available in prison.  Defendant argued that sixteen months was overly harsh when he was trying hard and doing his best with what he has got.  Finally, he explained he is attempting to obtain a state pardon for the underlying sex crime.

Particularly in light of the prison assault, the defense requested that Defendant be designated to a facility with a large sex-offender population, for his protection.  He specifically requested Butner in North Carolina, although the defense acknowledged that Ashland also has a significant sex-offender population.

**V.**

The Court has evaluated the entire record, including the most recent Supervised Release Violation Report and accompanying documents, the sentencing materials from the underlying

Judgment in this District, and the documentation concerning Defendant's previous violations. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender. *See* Guidelines 7 Pt. A(3)(b). Here, Defendant's release has been revoked on five previous occasions. The trust breach is also severe because Defendant was dishonest about his pornography use and because his failure to report when instructed makes it impossible to supervise him. An incarceration sentence is necessary under the circumstances.

Under these facts, the need to protect the public is not particularly strong. While Defendant seems to have trouble keeping his own ducks in a row, he does not appear to be a danger to others. Defendant appears to have overcome his drug addiction and no evidence suggests continued sexual interest in children.

As for deterrence, a significant incarceration sentence will provide Defendant with one final warning that he needs to follow the law. Supervision is not an effective deterrent because Defendant has a pattern of non-cooperation.

Defendant's personal history and characteristics are colored by his repeated failures to comply with his conditions of release. They suggest he will not be compliant in the future. The Court has been aware all along of Defendant's inadequate upbringing and has taken his troubled past into account. The Court is also aware of Defendant's apparent low functioning and his need for assistance in his daily life. But, as noted in 2020, no one has suggested that he is wholly incapable of complying with his conditions of release.

Another factor concerns the nature and circumstances of Defendant's underlying conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Here, the revocation conduct is unrelated to his underlying conviction for failure to register. This factor is not particularly relevant.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, the jointly proposed resolution is an above-Guidelines term of incarceration. This somewhat harsh recommendation balances Defendant being taken off supervision. An above-Guidelines penalty is clearly warranted here when it is Defendant's sixth revocation and he has thwarted Probation's attempts to supervise him throughout his history of multiple revocations.

The Court finds that a term of sixteen months of imprisonment is sufficient, but not greater than necessary, to meet the statutory goals of sentencing at this stage for all the reasons described above. And the Court agrees with the parties that Defendant is not amenable to supervision and Probation need not expend its resources on him anymore. Defendant, now 46

10

years old, does not appear to pose a serious threat to others. Although off federal supervision, he will continue to be monitored through his state's sex-offender-registry program.

## VI.

Based on the foregoing, the Court **RECOMMENDS:**

(1) That, upon his stipulations, Defendant be found guilty of Violations #1 and, #2.

(2) Revocation with a term of imprisonment of **sixteen months**, with no additional supervised release to follow. The Court **FURTHER RECOMMENDS** that for Defendant's safety the Bureau of Prisons designate Defendant to Butner or, if not, to some other facility with a high concentration of sex offenders.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Within **FOURTEEN DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 18th day of May, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge